IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THEODORE J. THOMPSON,
    Plaintiff,

v.                                    Case No. 3:12cv4/MCR/CJK

GREYHOUND LINES, INC., et al.,
    Defendants.
_____

## REPORT AND RECOMMENDATION

Plaintiff, proceeding *pro se* and *in forma pauperis*, has filed an amended complaint seeking to invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 7). The amended complaint asserts various state law claims, as well as a civil rights claim under 42 U.S.C. § 1983. Upon review of the amended complaint, the Court concludes that this case should be dismissed, because there is not complete diversity between the parties and because plaintiff's attempt to state a claim under 42 U.S.C. § 1983 lacks an arguable basis in the law.

BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises out of plaintiff falling asleep on a Colonial Trailways' bus bound for Jackson, Mississippi, and missing his stop. Plaintiff sues three defendants: Greyhound Lines, Inc. ("Greyhound"), Colonial Trailways, Inc. ("Continental") and Terry Reeves, the bus driver. (Doc. 7, pp. 1-3). Plaintiff alleges that on March 14, 2011, he bought a one-way Greyhound bus ticket from Pensacola, Florida to Tunica,

Mississippi.  (*Id*., p. 3).  The purpose of plaintiff's trip was to make a scheduled court appearance in Tunica, Mississippi on March 16, 2011 at 1:00 p.m.  (*Id*., p. 6 ¶ 9). Plaintiff boarded the Greyhound bus in Pensacola on March 14, 2011 at 10:55 p.m. (*Id*., p. 3 ¶ 5).  Plaintiff arrived in Mobile, Alabama at 12:05 a.m. on March 15, 2011, where he changed busses after a seven-hour layover, and boarded a Continental bus. (*Id*.).  Defendant Reeves was the driver of the Continental bus.  At the outset Reeves informed the passengers that the bus would arrive in Jackson, Mississippi at 12:05 p.m. on March 15, 2011, that that would be the "end-of-the-line," and that in Jackson the bus would be emptied, cleaned, refueled and reboarded on a return schedule to Mobile.  (*Id*., p. 4 ¶ 6).  Plaintiff fell asleep, and awoke at 2:20 p.m. on March 15, 2011 to find that he had missed his stop and was returning to Mobile.  (*Id*., p. 4 ¶¶ 6-7).  Plaintiff confronted Reeves, who was driving.  (*Id*., pp. 4-5 ¶ 7).  Reeves was unsympathetic and when plaintiff "insisted by questioning Reeves," Reeves allegedly told plaintiff, "I don't give a shit right now, I'm driving," and told plaintiff "you need to get back to your seat, boy, before you be getting kicked of[f] this bus period."  (*Id*., p. 5 ¶ 7).  Plaintiff confronted Reeves again when the bus stopped in Hattiesburg, Mississippi.  (*Id*.).  When that conversation was unproductive plaintiff informed Reeves that he "would seek legal action."  (*Id*.).  Plaintiff again confronted Reeves when the bus arrived back in Mobile, Alabama, asking Reeves if he "was intending to talk to a supervisor at Greyhound about the incident."  (*Id*., p. 6 ¶ 8).  Reeves responded, "You said back in Hattiesburg that you were gonna sue me, so I'm not doing shit for you, boy."  (*Id*.).  Plaintiff states he had "no way to return to his family in Pensacola," (*Id*., p. 6 ¶ 9), and was stranded in Mobile until plaintiff's brother sent plaintiff a ticket back to Pensacola.  Plaintiff arrived in Pensacola at 1:00 a.m. on

March 16, 2011.  (*Id*.).  Plaintiff alleges that due to the actions of the defendants, he missed his court date.  (*Id*.).  Plaintiff adds that he "did successfully complete his trip to Little Rock, Arkansas on March 17, 2011."  (*Id*.).

Based on the foregoing allegations, plaintiff claims defendant Reeves violated his rights under the First Amendment by discriminating against plaintiff (calling plaintiff, who is African American, "boy"), and by retaliating against plaintiff for expressing his complaints.  (*Id*., pp. 1, 7).  Plaintiff also asserts various state law claims against Reeves and the remaining defendants, including claims of negligence, breach of contract, "failure to follow standard operating procedures," harassment, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (*Id*., pp. 1, 7-9).  As relief, plaintiff seeks compensatory and punitive damages in excess of one million dollars.  (*Id*., p. 10).

Lack of Diversity Jurisdiction

Plaintiff asserts jurisdiction on the basis of diversity of citizenship, alleging that he is a "citizen of Arkansas under the Laws of Arkansas with a principal place of residence in Arkansas"; that defendants "are all citizens of Florida with corporations doing business in the State of Florida and a principal residence in Florida"; and that the amount in controversy "exceeds the sum or value specified by 28 U.S.C. § 1332."   (Doc. 7, p. 2 ¶ 2).  Plaintiff lists his own address as 6308 Denham Dr., Little Rock, Arkansas.  (*Id*.).  Plaintiff lists Greyhound's address as Dallas, Texas; Continental's address as Mobile, Alabama; and Reeves' address as "unknown residence" in Florida.  (*Id*.).

The jurisdiction of the federal courts is limited by the scope defined by the Constitution and by statute.  *In re Carter*, 618 F.2d 1093, 1098 (5th Cir. 1980); *Univ.*

*of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) ("It is by now axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress.") (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Subject-matter jurisdiction is a threshold inquiry that the Court is required to consider before addressing the merits of any claim. *See Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises."). The Court's subject matter jurisdiction should be raised *sua sponte* at any point in the litigation when a doubt about jurisdiction arises. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (raising the issue of subject matter jurisdiction *sua sponte*). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

      The party seeking to invoke the Court's diversity jurisdiction bears the burden of proving that complete diversity existed at the time the action commenced. *See Freeport-McMoRan Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S. Ct. 858, 859, 112 L. Ed. 2d 951 (1991). An action is commenced when the complaint is filed. Fed. R. Civ. P. 3; *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) ("Citizenship for diversity purposes is determined at the time the suit is filed."). Citizenship and domicile are synonymous for purposes of 28 U.S.C. § 1332. *Gilbert v. David*, 235 U.S. 561, 569, 35 S. Ct. 164, 166, 59 L. Ed. 360 (1915). However, "[d]omicile is not synonymous with residence; one may temporarily reside in one

location, yet retain domicile in a previous residence." *Molinos Valle Del Ciabao, C., por A. v. Lama*, 633 F.3d 1330, 1341-42 (11th Cir. 2011). In order to acquire domicile, the law requires the physical presence of a person at the place of domicile claimed, coupled with the intent to making it his present home. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 1608, 104 L. Ed. 2d 29 (1989) (citing *Texas v. Florida*, 306 U.S. 398, 59 S. Ct. 563, 83 L. Ed. 817 (1939)); *Morris v. Gilmer* 129, U.S. 315. 9 S. Ct. 289, 32 L. Ed. 690 (1889). "Courts generally give little weight to a party's profession of domicile; they do so because these declarations are often self-serving." *Molinos Valle Del Ciabao, C., por A. v. Lama*, 633 F.3d 1330, 1342 (11th Cir. 2011).

The record in this case, including facts of which this Court may take judicial notice, establish that plaintiff is a citizen of Florida, not Arkansas. The Court takes judicial notice of its own records in *Thompson v. Cricket Incorporation, et al.*, Case Number 3:11cv587/RS/EMT). Plaintiff initiated that case on December 8, 2011 by filing a civil complaint. Plaintiff asserted jurisdiction on the basis of diversity of citizenship. In support, plaintiff alleged that he was a citizen of the State of Florida and that the named defendants (Cricket Inc. and John Does) were citizens of California. (Case No. 3:11cv587, Doc. 1). Plaintiff's signature block on that complaint indicated plaintiff's address as "3050 W. DeSoto, Pensacola, Florida, 32501." After court correspondence to plaintiff was returned as undeliverable, plaintiff notified the court, via a teleconference on December 23, 2011, that his address was 1905 W. St. Joseph's Ave., Pensacola FL 32501. (Case No. 3:11cv587, Doc. 6). On January 3, 2012, plaintiff submitted an amended complaint in which he again asserted that he was a citizen of Florida. (Case No. 3:11cv587, Doc. 10, p. 2).

Plaintiff alleged that "while visiting family at 6308 Denham Dr., Little Rock Arkansas 72209, this pro se Plaintiff needed a temporary internet connection for his legal purposes while traveling." (*Id*., p. 3). Plaintiff further alleged that "on September 29, 2011, Plaintiff left Little Rock and traveled back to his home in the City of Pensacola Florida." (*Id*., p. 3). Later in the complaint, plaintiff discussed having "moved back home to Florida." (*Id*., p. 4). When a court order was returned as undeliverable, the Clerk of Court called plaintiff on January 12, 2012, and plaintiff confirmed the St. Jospeh's address. (Case No. 3:11cv587, Doc. 14). On February 8, 2012, plaintiff filed a second amended complaint in which he again asserted that he was a citizen of Florida. (Case No. 3:11cv587, Doc. 17). In addition, plaintiff again described Arkansas as the place where plaintiff "visit[s] his sister," and described Florida as his "home." (*Id*., p. 3). Plaintiff's second amended complaint was accompanied by a Notice of Change of Address confirming that plaintiff's "legal mailing address" is 1905 W. St. Joseph Ave., Pensacola, FL 32501." (Case No. 3:11cv587, Doc. 18).

     Plaintiff initiated the instant case on January 3, 2012, (doc. 1), the same day he submitted the amended complaint in Case No. 3:11cv587. Plaintiff asserted here that he was a citizen of Arkansas, even though he asserted in Case No. 3:11cv587 that he was a citizen of Florida. Plaintiff filed his amended complaint in the instant case on February 8, 2012 (doc. 7), the same day he submitted his second amended complaint in Case No. 3:11cv587. Plaintiff asserts here that he is a citizen of Arkansas, while asserting in Case No. 3:11cv587 that he is a citizen of Florida. The allegations of plaintiff's amended complaint in this case refer to plaintiff's "return[ing] to his family in Pensacola, Florida" on March 16, 2011, and references plaintiff's travel to

Arkansas as a "trip." (Doc. 7, p. 6 ¶ 9). The envelope in which plaintiff's amended complaint in this case arrived indicates plaintiff's return address as "1905 W. St. Joseph Ave., Pensacola, Florida 32501." (Doc. 7, p. 11).

The citizenship inquiry focuses on plaintiff's domicile as of January 3, 2012 - whether plaintiff was physically present at the place of domicile claimed and whether he intended to make the alleged place of domicile his present home. The allegations of plaintiff's complaints, taken together with the facts of which the Court may take judicial notice in Case Number 3:11cv587, demonstrate that at the time plaintiff commenced this action he was physically located in Florida, not Arkansas, and considered Florida, not Arkansas, his home. As Florida is also the domicile of at least one defendant, complete diversity of citizenship is lacking. Thus, to the extent plaintiff seeks to invoke this Court's diversity jurisdiction, the action should be dismissed under Fed. R. Civ. P. 12(h)(3).

Lack of Plausible § 1983 Claim for Violation of Plaintiff's First Amendment Rights

Liberally construing plaintiff's complaint, plaintiff attempts to invoke the Court's federal question jurisdiction by asserting civil rights claims under 42 U.S.C. § 1983. Because plaintiff is proceeding *in forma pauperis*, the Court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). The Court accepts all factual

allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1968-69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim)

In order to prevail in a civil rights action under § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or federal law. *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Id*. at 1303. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999) (internal quotations omitted). Only in rare circumstances may a private party be viewed as a state actor for § 1983 purposes:

> [T]o hold that private parties . . . are State actors, th[e] court must conclude that one of the following three conditions is met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution (State compulsion test); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State (public function test); or (3) the State had so far insinuated itself into a position of interdependence with the private

parties that it was a joint participant in the enterprise (nexus/joint action test).

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (internal quotations omitted).

The allegations of plaintiff's amended complaint do not remotely suggest the kind of action that would subject the defendants, all private parties, to § 1983 liability as "state actors." Thus, plaintiff's civil rights claims against defendant Reeves (and any other defendant) seeking damages for the alleged violation of plaintiff's constitutional rights must be dismissed. *See, e.g., Harvey v. Harvey*, 949 F.2d 1127, 1132-33 (11th Cir. 1992) (dismissing involuntarily committed patient's § 1983 claims against her husband and his attorney for allegedly conspiring to have patient committed to private mental hospital).

Accordingly, it is respectfully RECOMMENDED:

1. To the extent plaintiff seeks to invoke this Court's diversity jurisdiction, the Court should DISMISS this action for lack of subject matter jurisdiction.

2. To the extent plaintiff seeks to invoke this Court's federal question jurisdiction by asserting § 1983 claims based on the alleged violation of plaintiff's constitutional rights, the Court should DISMISS plaintiff's federal claims WITH PREJUDICE for failure to state a claim upon which relief may be granted, and the Court should decline to exercise supplemental jurisdiction over plaintiff's state-law claims and DISMISS those claims WITHOUT PREJUDICE. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

3. The Clerk should be directed to close this file.

At Pensacola, Florida this 14th day of February, 2012.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *Se*e 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).